**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **YOLANDA JONES, individually and on behalf of all persons similarly situated,** | Civil Action No.: 2:20-cv-1180 |
| Plaintiff, | Complaint— Class Action |
| v. | Jury Trial Demanded |
| **LEXISNEXIS RISK SOLUTIONS, INC., and KROLL FACTUAL DATA, INC.,** | ELECTRONICALLY FILED |
| Defendants. | |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, Yolanda Jones ("Plaintiff"), by counsel, and as for her Complaint against Defendants LexisNexis Risk Solutions, Inc. (LexisNexis") and Kroll Factual Data, Inc. ("Kroll"), she states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought pursuant to 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA").

2. LexisNexis prepares and furnishes consumer reports that include civil judgments and tax liens. It diligently collects the initial entry of these judgments and liens, however when a later event occurs with respect to those records (for example, when a judgment is satisfied or a lien is withdrawn or released), LexisNexis does not collect the subsequent disposition of that judgment or lien.

3. Kroll purchases records from Lexis– including the record regarding the Plaintiff – despite knowing of the problems and failures of the LexisNexis record collection procedures. Kroll does not take adequate steps to verify that records it purchases from LexisNexis are accurate.

4. Both LexisNexis, as the originating consumer reporting agency ("CRA"), and Kroll, as the Reseller CRA, have statutory obligations to use reasonable procedures to ensure the maximum possible accuracy of their reports. 15 U.S.C. § 1681e(b). Neither uses such procedures. Accordingly, both Defendants are liable to Plaintiff and the Class under the FCRA.

## JURISDICTION

5. The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1681p.

6. LexisNexis and Kroll regularly do business here. LexisNexis furnished the report regarding the Plaintiff (and others regarding Kroll reported consumers).

7. Kroll does business from its office in Pittsburgh, where its parent company, CBC Innovis, is headquartered.

## PARTIES

8. Plaintiff is a natural person and a "consumer" as defined by § 1681a(c) of the FCRA.

9. Defendant Lexis Nexis is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f).

10. LexisNexis is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

11. Defendant Kroll is a corporation with a principal place of business in Pittsburgh, Pennsylvania. Kroll is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f).

12. Kroll is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## FACTUAL ALLEGATIONS

**A.    Defendant LexisNexis's Procedures**

13.    LexisNexis affirmatively seeks out and purchases public records data, including tax liens and civil judgments, to include this derogatory information in the credit reports it sells.

14.    LexisNexis proactively gathers and disseminates this derogatory information even though there is nothing in the FCRA that affirmatively requires it to do so.

15.    For years, LexisNexis was the exclusive CRA provider of tax lien and civil judgment information that was included on credit reports issued by the "Big 3" credit bureaus, Experian, Equifax, and TransUnion.

16.    The Big 3 hid LexisNexis' involvement in the reporting of public records, and until recently did not disclose to consumers that LexisNexis was the entity that collected tax liens and civil judgments for inclusion in credit reports.

17.    The public record information provided to the Big 3 by LexisNexis was frequently inaccurate and out-of-date.

18.    In 2015, the Big 3 CRAs entered into a multi-state settlement agreement with over 30 state attorneys general that attempted to alleviate some of the accuracy issues with respect to the reporting of tax liens and civil judgments.

19.    In 2017, pursuant to that settlement, the Big 3 agreed to only report public records if they were updated every 90 days.

20.    In 2018 and 2019, the Big 3 went a step further, and agreed to stop completely reporting public records and tax liens as part of three nationwide class actions settlements. *Clark*

*v. Trans Union, LLC,* Case No. 3:15-cv-00391 (E.D. Va.); *Clark v. Experian Info. Sols., Inc.*, No. 3:16-cv-00032 (E.D. Va.); *Thomas et al. v. Equifax Information Services, LLC*, Case No. 3:18-cv-00684-MHL (E.D. Va.).

21. LexisNexis, however, has decided to take advantage of the Big 3's decision to stop selling LexisNexis's data by marketing public record credit reports under its own brand.

22. LexisNexis has issued marketing materials targeted at lenders and creditors regarding the purported "negative consequences" of not having tax lien and civil judgment information included in credit reports.[1]

23. LexisNexis markets its "RiskView Liens and Judgment Report" as providing the information no longer provided by the Big 3: "After the removal of liens and judgments data from credit reporting agencies, companies found themselves in need of other data sources to support their models. Learn how LexisNexis® Risk Solutions offers a product that provides liens and judgments so that credit models don't have to be recalibrated or altered."[2]

24. Of course, LexisNexis does not disclose in its marketing materials that the inaccuracies in its data are the reason why the Big 3 stopped reporting civil judgments and tax liens.

25. LexisNexis uses automated procedures and, in some instances, inexpensive "independent-contractor" (work from home) vendors to collect information regarding judgments and tax liens that undergo little, if any, meaningful quality control.

---

[1] *See* LexisNexis, Liens and Judgments Impact Report, available at https://solutions.risk.lexisnexis.com/Liens-Judgments-Impact-Report (last accessed August 7, 2020)

[2] *See* LexisNexis, Presentation, available at https://risk.lexisnexis.com/insights-resources/presentation/navigating-the-new-environment-for-liens-and-judgments (last accessed August 7, 2020)

26. As a matter of common policy, LexisNexis does not adequately update tax lien or judgment disposition information when a civil judgment or tax lien is satisfied.

27. For example, in litigation against Experian, which obtained its records from LexisNexis, the data analyzed showed an average delay in obtaining and reporting civil judgment status updates at 77 months, and in South Carolina, lien updates took an average of 243.5 days between the time the disposition update was recorded in the public record and the date that Experian eventually obtained it.

28. LexisNexis fails to update dispositions (satisfactions, vacaturs, withdraws, appeals and dismissals) because it is more expensive to do so than to use its current inadequate procedures. Updating records to appropriately reflect satisfactions would require a much more rigorous set of procedures to collect those records and update the original records than LexisNexis currently employs. Implementing those procedures would require further has invested in the collection process and in LexisNexis's procedures for updating its data. For example, while cases are filed in sequential order and thus assigned indexable case numbers, later dispositions typically are filed under the original case number. LexisNexis would have to gather these records on a timely and basis, and then use advanced processes to assign the later-filed dispositions to the corresponding original judgment or lien.

29. Similarly. LexisNexis often cannot obtain full personally identifying information (full name, date of birth, social security number, address, etc.) from online reviews of publicly available Internet docket indices, which is how it obtains its records. Instead, LexisNexis would have to obtain the actual court or use electronic sources which are not available on the Internet to obtain more detailed information. Because it fails to obtain full identifying information, LexisNexis frequently attributes records to the wrong consumers.

30.     Thus, LexisNexis published public records data that it knew would be inaccurate if a release, satisfaction, dismissal, vacatur or appeal had occurred. LexisNexis relies on consumers to clean up their own files via the dispute process after learning of the inaccuracy, rather than paying to have these dispositions collected in a manner that would ensure accuracy in the first instance.

31.     LexisNexis has known about its inadequate procedures for years. In addition to being aware of lawsuits filed related to the quality of its records, LexisNexis has also gained this knowledge through disputes received from consumers, including disputes sent directly to LexisNexis by consumers and disputes received from the Big 3 and other credit bureaus in instances where a consumer disputed their public record with the credit bureau directly.

32.     The methods and processes used by LexisNexis to gather releases, satisfactions, vacaturs, and dismissals have been materially the same for the previous five years.

33.     At all times pertinent to this Complaint, LexisNexis' unlawful conduct regarding the collection of disposition information was willful and carried out in reckless disregard for consumers' rights as set forth under the FCRA.

34.     By way of example only, and without limitation, LexisNexis's conduct was willful because it was intentionally accomplished through intended procedures; it had knowledge of its violation through other lawsuits in other jurisdictions but it did nothing to rectify the problem, and because it was motivated by placing LexisNexis' financial interests above the interests of consumers in accurate reporting. LexisNexis believed that its reporting derogatory credit information about tax liens and judgments was of greater economic value to its paying customers than "disposition" information that demonstrated that the debt was no longer owed.

35.     As a result of LexisNexis's conduct, Plaintiff and the putative class members

suffered particularized and concrete injuries, including damage to their reputations, reductions to their credit scores, and increased risks that they would be denied credit.

### B. Defendant Kroll's Procedures

36. Kroll boasts that it is a "trusted provider of credit, risk mitigation, flood, and verification services to the mortgage industry."

37. Kroll provides "tri-merge" credit reports for mortgage loan applications in which it purchases, reorganizes and compiles and then resells consumer credit files it purchases form the Big-3.

38. Now, and during the class period, Kroll has added a fourth credit report – the LexisNexis "Riskview" report, which contains judgment and tax lien information.

39. Kroll purchases and resells the LexisNexis report because it is less expensive than Kroll searching and compiling judgment and lien information directly. It is also less expensive than Kroll obtaining information from more accurate sources.

40. Kroll has long been a member of the industry group Consumer Data Industry Association ("CDIA"), as have been LexisNexis as well as Kroll's parent company, the fourth largest national credit reporting agency, CBC Innovis.

41. Further, Kroll's management reads and reviews legal and other industry developments and regularly attend seminars and trade events put on by the CDIA.

42. As a result of all of its regular review and industry participation, Kroll was aware of the Attorneys General actions and then settlements with the Big-3 regarding their reporting of the LexisNexis reports.

43. As a result of all of its regular review and industry participation, Kroll was aware of the national class actions and then settlements with the Big-3 regarding their reporting of the

LexisNexis reports.

44. Kroll is aware that even its parent, CBC Innovis, remains in class action litigation regarding its continued use of the inaccurate LexisNexis reports.

45. Kroll is also aware of all of this because the Big-3 have ceased selling public records within their reports and LexisNexis had to explain why.

46. Notwithstanding all of this notice, Kroll has resold LexisNexis reports without sufficient independent investigation, audits, research or review to ensure that LexisNexis had somehow corrected the gross inaccuracies that caused the Big-3 to cease reporting its data.

47. By way of example only, and without limitation, Kroll's conduct was willful because it was intentionally accomplished through intended procedures; it had knowledge of its violation through other lawsuits in other jurisdictions but it did nothing to rectify the problem, and because it was motivated by placing its financial interests above the interests of consumers in accurate reporting. Kroll believed that its reporting derogatory credit information about tax liens and judgments was of greater economic value to its paying customers than "disposition" information that demonstrated that the debt was no longer owed.

48. As a result of Kroll's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damage to their reputations, reductions to their credit scores, and increased risks that they would be denied credit.

**C.  Plaintiff's Experience**

49. On January 12, 2017, Tower Loan of Collins filed a case against Plaintiff in the Justice Court for Covington County, Mississippi.

50. The Court ruled in favor of Tower Loan of Collins and a judgment was entered against Plaintiff on April 19, 2017.

51. The judgment was satisfied and paid in full on October 23, 2017.

52. In 2018, Plaintiff applied for a mortgage with a local lender, Peoples Bank.

53. As part of that loan application process, the lender purchased a credit report from Kroll. That report was dated August 8, 2018.

54. The Kroll report contained a LexisNexis Riskview report showing the Tower Loan judgment still as unpaid and unsatisfied. This was inaccurate.

55. Plaintiff then also obtained a copy of her LexisNexis file in May 2020.

56. Even as late as May 2020, LexisNexis *still* neglected to report the case status or the satisfaction date. Thus, LexisNexis' reporting of the civil judgment remained misleading and incomplete.

57. Plaintiff disputed LexisNexis' misreporting. Plaintiff informed LexisNexis that the public record was satisfied.

58. Despite such notice, LexisNexis failed to conduct a reasonable investigation.

59. LexisNexis provided its investigation results to Plaintiff dated May 28, 2020. LexisNexis refused to update its reporting of the civil judgment despite Plaintiff's dispute and the Court's entry of satisfaction over *two years* prior.

60. Instead, LexisNexis generated its dispute response and did not make material changes to its reporting of the civil judgment.

61. Upon information and belief, LexisNexis continues to report the civil judgment without a case status or satisfaction date. This reporting is misleading because it does not reflect the accurate status of the record at the time of the report, and causes creditors to believe Plaintiff never paid the judgment against her.

## **CLASS ACTION ALLEGATIONS**

62. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) against LexisNexis on behalf of the following class (the "LexisNexis Class"):

> All natural persons who: (i) were the subject of a civil judgment and/or tax lien recorded in any court clerk's office or court in the United States (ii) where the judgment or lien appeared within a Kroll Factual Data or CBC Innovis consumer report dated within the five year period preceding the filing date of this Complaint, and (iii) where the public record filing of the related governmental agency indicated that the civil judgment or tax lien had been satisfied, vacated, dismissed, released or withdrawn on a date at least 30 days prior to the date of the consumer report.
>
> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.

63. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) against Kroll on behalf of the following class (the "Kroll Class"):

> All natural persons who: (i) were the subject of a civil judgment and/or tax lien recorded in any court clerk's office or court in the United States (ii) where the judgment or lien appeared within a Kroll Factual Data consumer report dated within the five year period preceding the filing date of this Complaint, and (iii) where the public record filing of the related governmental agency indicated that the civil judgment or tax lien had been satisfied, vacated, dismissed, released or withdrawn on a date at least 30 days prior to the date of the consumer report.
>
> Excluded from the class are all persons who have signed a written release of their claim, counsel in this case, and the Court and its employees.
> .

64. **Numerosity.** The class members are so numerous that joinder of all is impractical. Although the precise number of class members is known only to Defendants there are hundreds of thousands of recorded tax liens and civil judgments nationwide and Kroll is one of the largest tri-merge, and mortgage report CRAs nationally.

65. The names and addresses of the class members are identifiable through documents maintained by Defendants and CBC Innovis, and through public entities that maintain civil

judgement and tax lien information.

66. Civil judgement and tax lien data can be compared to Defendants' data to ascertain which consumers would meet the definition of the classes above.

67. Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a. Whether Defendants adopted procedures that collected and reported updates to liens that were less systematic and effective than those it used to initially collect and report the liens and civil judgments;

b. Whether this conduct constituted a violation of the FCRA; and

c. Whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of Plaintiff and the putative class members.

68. Typicality. Plaintiff's claims are typical of the claims of each class member, which all arise from the same operative facts and are based on the same legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. § 1681e(b). This claim challenges the credit reporting procedures of Defendants and does not depend on any individualized facts. Each Defendant's notice and knowledge of the challenged reporting problem is the same for Plaintiff, as for the putative class.

69. Adequacy. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative

class and has accepted such.

70. **Predominance and Superiority.** Questions of law and fact common to the class members predominate over questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Each Defendant's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA. Members of the classes do not have an interest in pursuing separate actions against LexisNexis or Kroll, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

71. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## **CAUSES OF ACTION**

### **COUNT I**
**15 U.S.C. § 1681e(b)**
**Class Action Claim on behalf of Plaintiff and the LexisNexis Class**

72. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

73. Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the LexisNexis class members.

74. As a result of Defendants' misconduct, Plaintiff and putative class members suffered damages to their reputations, reductions to credit scores, increased risk of credit denial and other concrete actual harm.

75. Defendant LexisNexis' violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff and the LexisNexis class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT II
### 15 U.S.C. § 1681e(b)
### Class Action Claim on behalf of Plaintiff and the Kroll Class

77. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

78. Defendant Kroll violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the Kroll class members.

79. As a result of Defendants' misconduct, Plaintiff and putative class members suffered damages to their reputations, reductions to credit scores, increased risk of credit denial and other concrete actual harm.

80.	Defendant Kroll's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Kroll was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.	Plaintiff and the Kroll class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**COUNT III**
**15 U.S.C. § 1681i against LexisNexis**
**Individual Claim**

82.	Plaintiff incorporates by reference all preceding paragraphs as alleged above.

83.	LexisNexis violated multiple sections of 15 U.S.C. § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information from Plaintiff in violation of §1681i(a)(4); (3) failing to promptly modify the disputed inaccurate item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

84.	As a result of LexisNexis's misconduct, Plaintiff has suffered damages to her reputation, reductions to credit scores, and increased risk of credit denial along with emotional distress, including frustration, anger, worry, and embarrassment.

85.	Defendants' violation of 15 U.S.C. § 1681i was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86.     Plaintiff is entitled to recover actual and/or statutory damages, punitive damages, costs, and attorneys' fees from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n, o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against the Defendants, for class certification as pled; for statutory and punitive damages for herself and each member of the LexisNexis Class for Count One; for statutory and punitive damages for herself and each member of the Kroll Class for Count Two; for actual, statutory and punitive damages for herself against LexisNexis pursuant to Count Three; for equitable and injunctive relief; and for attorneys' fees and costs and such other specific or general relief the Court does find just and appropriate.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Dated:  August 7, 2020                         Respectfully submitted,

**BERGER MONTAGUE PC**

/s Sarah R. Schalman-Bergen
Sarah R. Schalman-Bergen (PA 206211)
1818 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 875-3053
(215) 875-4604 (Facsimile)
sschalman-bergen@bm.net

E. Michelle Drake (*pro hac vice* to be filed)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Phone: (612) 594-5999
Fax: (612) 584-4470
emdrake@bm.net

Leonard A. Bennett (*pro hac vice* to be filed)
Craig C. Marchiando (*pro hac vice* to be filed)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq., (*pro hac vice* to be filed)
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com

*Attorneys for Plaintiff and the Proposed Class*